# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**
Jun 30 2025
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ VeronicaCota    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  25MJ8559
)
Grey Apple iPhone 11 )
With no other identifying numbers or features )
Seized as FP&F No. 2025250300022701, Item #0005 )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___SOUTHERN___ District of ___CALIFORNIA___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 and 963 | Importation of a Controlled Substance; Conspiracy to Commit the Same |

The application is based on these facts:

See Attached Affidavit of Homeland Security Investigations Special Agent Caroline O'Connell incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

CAROLINE E OCONNELL  Digitally signed by CAROLINE E OCONNELL
Date: 2025.06.27 16:03:21 -07'00'

*Applicant's signature*

Special Agent Caroline O'Connell, HSI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 06/30/2025

*Judge's signature*

City and state:  El Centro, California        HON. LUPE RODRIGUEZ, JR. U.S. MAG. J.

*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

**A**:     Grey Apple iPhone 11

With no other identifying numbers or features

Seized as FP&F No. 2025250300022701, Item #0005

(Target Device)

The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Avenue, Suite 100, El Centro, California.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 23, 2025, up to and including June 23, 2025.

a. tending to indicate efforts to import methamphetamine or some other federally controlled substance, from Mexico into the United States and destinations beyond;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of marijuana, methamphetamine or some other federally controlled substance, from Mexico into the United States and destinations beyond;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of marijuana, methamphetamine or some other federally controlled substance, from Mexico into the United States and destinations beyond;

d. tending to identify travel to or presence at locations involved in the importation of marijuana, methamphetamine or some other federally controlled substance, from Mexico into the United States, such as stash houses, storage units, warehouses or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Caroline O'Connell, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

**A**:   Grey Apple iPhone 11

   With no other identifying numbers or features

   Seized as FP&F No. 2025250300022701, Item #0005

   (Target Device)

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Joshua YEPES Petriciolet (YEPES) and Grisel PETRICIOLET-Martinez (PETRICIOLET) for importing approximately 120.36 kilograms (265.35 pounds) of methamphetamine from Mexico into the United States. The Target Device is currently in the possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (ASAC Calexico), located at 2051 North Waterman Avenue, El Centro, California 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since 2024. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge, in El Centro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

1

4.      During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, a narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.      I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles, on pedestrians, or items belonging to pedestrians that enter the United States at Ports of Entry such as the Calexico East and West Port of Entry and the Andrade Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible with bringing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the smuggler regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the smuggler to remotely monitor the progress of the narcotics, provide instructions to the smuggler and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the smuggler to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

6.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats

and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

7. On June 22, 2025, at approximately 4:08 P.M., Joshua YEPES-Petriciolet (YEPES) and Grisel PETRICIOLET-Martinez (PETRICIOLET), both citizens of Mexico, applied for entry into the United States at the Calexico, California, West Port of Entry vehicle lanes in a grey Nissan Sentra bearing Mexico License plates. YEPES was the driver of the vehicle and PETRICIOLET was the passenger.

8. CBPO Solis was assigned to vehicle primary lane #6. CBPO Solis received

3

negative declarations from YEPES and PETRICIOLET. CBPO Solis asked both parties where they were going to which both YEPES and PETRICIOLET stated they were on the way to Burlington in El Centro. CBPO Solis performed an inspection of the vehicle and referred the vehicle to secondary inspection.

9. While in the Vehicle Secondary lot, the vehicle was screened utilizing a mobile x-ray truck, which indicated anomalies on the floor of the driver and passenger sides of the vehicle. A further inspection of the vehicle resulted in the discovery of 181 plastic packages containing a crystal-like substance. The total weight of the packages was approximately 120.36 kg (265.35 pounds). A sample taken from one of the packages field-tested positive for the properties of methamphetamine. At approximately 8:30 p.m., Special Agent (SA) O'Connell and SA Fitch took custody of YEPES and PETRICIOLET at the Calexico, California West Port of Entry.

10. YEPES was advised of his Miranda Rights in Spanish which he agreed to answer questions without an attorney present. YEPES stated approximately one month ago, his ex-stepdad had gifted him this vehicle. Within the last two days, YEPES stated his friends at the mechanics shop he worked at took the vehicle to do work on it. YEPES stated that he planned to drive the vehicle into the United States with his mom. Upon arriving in the US, he was to get a phone call telling him where to leave the vehicle. He and his mom would then return to Mexico on a motorcycle. YEPES stated this was his first time driving a car north to leave in the US, but that previously he has ridden his motorcycle into the US and left it to drive vehicles home to Mexico. He stated he is paid $300 to do this. YEPES stated he was unaware there were narcotics in the vehicle and his ex-stepdad gift it to him through a mutual friend.

11. PETRICIOLET was advised of her Miranda Rights in Spanish which she agreed to answer questions without an attorney present. PETRICIOLET stated approximately one to two months ago, her son had purchased this vehicle. Within the last two days, PETRICIOLET stated she was unaware of anyone else having driven the vehicle. PETRICIOLET stated that she planned to drive the vehicle into the United States with her

son. Upon arriving in the US, PETRICIOLET stated they were going to Burlington in El Centro and out to lunch. PETRICIOLET stated they were then going to drive the same vehicle home to Mexico. PETRICIOLET stated she was unaware there were narcotics in the vehicle.

12. The Target Device was found in YEPES' car and was seized at the time of arrest. During the post-Miranda interview, YEPES was shown the Target Device and identified it as belonging to him. YEPES and PETRICIOLET were placed under arrest and charged with a violation of Title 21, United States Code sections 952 and 960, Importation of a Controlled Substance, and booked into the El Centro GEO Detention Center.

13. Based upon my experience and training, consultation with other law enforcement officers experienced in smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the Target Devices to communicate with others to further the importation of illicit contraband into the United States. Further, in my training and experience, traffickers may be involved in the planning and coordination of a smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the contraband. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on May 23, 2025, up to and including June 23, 2025, the day after the arrest of YEPES and PETRICIOLET.

## METHODOLOGY

14. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

17. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

18. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendants' violations of Title 21, United States Code, Sections 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

CAROLINE E OCONNELL
Digitally signed by CAROLINE E OCONNELL
Date: 2025.06.27 16:04:37 -07'00'

Special Agent Caroline O'Connell
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 30th day of June, 2025.

_____ 8:46 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

7

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

**A**:     Grey Apple iPhone 11

With no other identifying numbers or features

Seized as FP&F No. 2025250300022701, Item #0005

(Target Device)

The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Avenue, Suite 100, El Centro, California.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 23, 2025, up to and including June 23, 2025.

a. tending to indicate efforts to import methamphetamine or some other federally controlled substance, from Mexico into the United States and destinations beyond;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of marijuana, methamphetamine or some other federally controlled substance, from Mexico into the United States and destinations beyond;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of marijuana, methamphetamine or some other federally controlled substance, from Mexico into the United States and destinations beyond;

d. tending to identify travel to or presence at locations involved in the importation of marijuana, methamphetamine or some other federally controlled substance, from Mexico into the United States, such as stash houses, storage units, warehouses or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.